UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                      Chapter 11

WALTER P SAUER LLC,                                          Case No.: 19-44154 (NHL)

                                Debtor.
------------------------------------------------------------X

## DISCLOSURE STATEMENT FOR SMALL BUSINESS[1] UNDER
## CHAPTER 11 FOR PLAN OF REORGANIZATION OF THE DEBTOR
## <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>


**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITOR'S DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**


**THE DEBTOR IN THIS CASE IS A SMALL BUSINESSES.  AS A RESULT, THE DEBTOR MAY DISTRIBUTE THIS DISCLOSURE STATEMENT BEFORE ITS FINAL APPROVAL BY THE COURT.  IF AN OBJECTION TO THIS DISCLOSURE STATEMENT IS FILED BY A PARTY IN INTEREST, FINAL APPROVAL OF THIS DISCLOSURE STATEMENT WILL BE CONSIDERED AT OR BEFORE THE HEARING ON CONFIRMATION OF THE PLAN.**


LAWRENCE F. MORRISON
BRIAN J. HUFNAGEL
MORRISON TENENBAUM PLLC
87 Walker Street, Floor 2
New York, New York 10013
Telephone: (212) 620-0938
Facsimile: (646) 390-5095

ATTORNEYS FOR THE DEBTOR

---

[1] Adapted from Official Form 425B

# TABLE OF CONTENTS

I. Introduction ......................................................................................................... 1

a. Purpose of This Document ................................................................................. 1

b. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............................ 2

c. Disclaimer.......................................................................................................... 2

II. Background.......................................................................................................... 3

a. Description and History of the Debtors' Businesses ............................................... 3

b. Insiders of the Debtors....................................................................................... 3

c. Management of the Debtors During the Bankruptcy............................................... 3

d. Events Leading to Chapter 11 Filing................................................................... 3

e. Significant Events During the Bankruptcy Cases.................................................. 3

f. Projected Recovery of Avoidable Transfers ......................................................... 4

g. Claims Objections.............................................................................................. 4

h. Current and Historical Financial Conditions ........................................................ 5

III. Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests........ 5

a. What is the Purpose of the Plan of Reorganization? ............................................. 5

b. Unclassified Claims............................................................................................ 5

i. Administrative expenses, involuntary gap claims, and quarterly and Court fees.................... 5

ii. Priority tax claims.............................................................................................. 6

c. Classes of Claims and Equity Interests.................................................................. 7

i. Classes of Secured Claims................................................................................. 7

ii. General Unsecured Claims ................................................................................ 8

iii. Classes of equity interest holders ..................................................................... 8

d. Means of Implementing the Plan......................................................................... 9

i. Source of payments ........................................................................................... 9

ii. Post-confirmation Management ......................................................................... 10

e. Risk Factors ...................................................................................................... 10

f. Executory Contracts and Unexpired Leases ......................................................... 10

g. Tax Consequences of the Plan............................................................................. 11

IV. Confirmation Requirements and Procedures........................................................... 12

a. Who May Vote or Object ................................................................................... 12

i. What is an allowed claim or an allowed interest? ................................................ 13

ii. What is an impaired claim or impaired equity interest?....................................... 13

iii.  Who is not entitled to vote ...................................................................................... 13

iv.  Who can vote in more than one class ..................................................................... 14

b.  Votes necessary to Confirm the Plan ...................................................................... 14

i.  Votes necessary for a class to accept the plan ....................................................... 14

ii.  Treatment of non-accepting classes of secured claims, general unsecured claims, and interests ........................................................................................................................... 15

c.  Liquidation Analysis ............................................................................................... 15

d.  Feasibility ................................................................................................................ 16

i.  Ability to initially fund plan .................................................................................. 16

ii.  Ability to make future plan payments and operate without further reorganization ............... 16

V.  Effect of Confirmation of Plan ............................................................................... 16

a.  Discharge of Debtor ................................................................................................ 16

b.  Modification of Plan ............................................................................................... 17

c.  Final Decree ............................................................................................................ 17

VI.  Other Plan Provisions ............................................................................................. 17

a.  Statutory Fees ......................................................................................................... 17

b.  Quarterly Reports ................................................................................................... 18

c.  Re-vesting of Assets and Continuing Existence ..................................................... 18

d.  Unclaimed Property ................................................................................................ 19

e.  Retention of Jurisdiction ........................................................................................ 19

f.  Injunction and Exoneration .................................................................................... 20

g.  Effective Date ......................................................................................................... 20

EXHIBIT A:  PLAN OF REORGANIZATION ....................................................... 22

EXHIBIT B:  VALUE OF DEBTORS' ASSETS ................................................... 23

EXHIBIT C:  MOST RECENT OPERATING REPORTS ...................................... 24

EXHIBIT D:  LIQUIDATION ANALYSIS .............................................................. 25

EXHIBIT E:  PROJECTIONS .................................................................................. 26

EXHIBIT F PROJECTED DISTRIBUTIONS TO UNSECURED CREDITORS .................. 27

## I.      Introduction

This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of Walter P Sauer LLC (the "Debtor").  This Disclosure Statement provides information about the Debtor and the Plan of Reorganization filed on April 22, 2020 (the "Plan") to help you decide how to vote.

A copy of the Plan is attached as *Exhibit A.*  **Your rights may be affected.**  You should read the Plan and this Disclosure Statement carefully.  You may wish to consult an attorney about your rights and your treatment under the Plan.

The plan will be funded by a $125,000 contribution to be made by Anthony Morris. After payment of administrative and priority claims, the balance of the plan fund will be distributed to unsecured creditors.  The proposed distributions under the Plan are discussed at pages 6-10 of this Disclosure Statement.  General unsecured creditors are classified in Class 4, and will receive a distribution of 5% of their allowed claim to be distributed as follows: lump sum payment to be made on the effective date of the Plan.  In the event that the Debtor pursues any preference claims pursuant to section 547 of the Bankruptcy Code, the net proceeds after paying expenses of litigation will be distributed to the unsecured creditors.

### a.   Purpose of This Document

This Disclosure Statement describes:

- The Debtors and significant events during the bankruptcy cases,

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.,* what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why the Debtors believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### b. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement.  A separate order has been entered (please refer to the Order for information concerning the confirmation hearing and objection deadline) setting the following information:

- Time and place of the hearing to finally approve this disclosure statement and confirm the plan,

- Deadline for voting to accept or reject the plan; and

- Deadline for objecting to the adequacy of disclosure and confirmation of the plan.

If you want additional information about the Plan or the voting procedure, you should contact the Debtors' counsel: Morrison Tenenbaum PLLC, 87 Walker Street, New York, New York 10013, Telephone: (212) 620-0938, Facsimile: (646)390-5095, Attn: Brian J. Hufnagel, Esq., bjhufnagel@m-t-law.com

### c. Disclaimer

**THE COURT HAS CONDITIONALLY APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED JUDGMENT ABOUT ITS TERMS. THE COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL**

**REQUIREMENTS FOR CONFIRMATION, AND THE FACT THAT THE**

**COURT HAS APPROVED THIS DISCLOSURE STATEMENT DOES NOT**

**CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE COURT, OR**

**A RECOMMENDATION THAT IT BE ACCEPTED.**

II.    **Background**

    a.  **Description and History of the Debtors' Businesses**

The Debtor operates a furniture manufacturing business located at 276 Greenpoint

Avenue, Brooklyn, New York 11222.

    b.  **Insiders of the Debtors**

The insiders of the Debtor are Anthony Morris who is the 80% owner of the Debtor and

Nancy Morris who is a 20% owner.

    c.  **Management of the Debtors During the Bankruptcy**

The Debtors are managed by Anthony Morris who is the Managing Member of the

Debtor and manages the day to day affairs of the business.  Post-petition, the Debtor will

continue to be managed by Mr. Morris and his compensation is $2,626.66 weekly.

    d.  **Events Leading to Chapter 11 Filing**

The bankruptcy filing was necessitated by arrears owed to the Debtor's landlord and

amounts owed to the Trustees of the Hollow Metal Pension Fund.  The Debtors filed these

chapter 11 cases to restructure their operations and resolve claims of all creditors in one forum.

    e.  **Significant Events During the Bankruptcy Cases**

- On July 8, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

- On August 13, 2019 the Court entered an order setting October 21, 2019 as the bar date by which proofs of claim must be filed.

- On September 24, 2019, the Court entered an order authorizing the Debtor to employ Morrison Tenenbaum PLLC as its chapter 11 counsel.

- On October 29, 2019, the Court entered an order authorizing the Debtor to employ EisnerAmper, LLP ("Eisner") as business valuation consultant. In January, 2020 Eisner submitted a valuation report that valued the Debtor's business on a going concern basis at $260,000.

- On March 9, 2020, the Debtor filed a motion (the "Sale Motion") to sell substantially all of its assets to Danny Mendelson for the sum of $125,000 plus a credit bid in the amount of his secured claim.

- On March 18, 2020,the Hollow Metal Pension Fund (the "Pension Fund") filed an objection to the Sale Motion. After subsequent negotiations, the Debtor reached an agreement with the Pension Fund regarding the terms of a plan of reorganization, and the Debtor is now in a position to file this Plan.

### f.  Projected Recovery of Avoidable Transfers

The Debtors are reviewing their records to determine whether there are any avoidance actions to be pursued for the benefit of creditors. The net proceeds of avoidance actions, after the costs and expenses of bringing those actions have been paid, will be distributed to general unsecured creditors.

### g.  Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. Disputed claims are treated in Article 5 of the Plan. The Debtors do not intend to object to any claims, but reserve the right to do so.

### h.  Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in *Exhibit B*.

The most recent post-petition operating reports filed since the commencement of the Debtors' cases are set forth in *Exhibit C*.

### III.    Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests

### a.  What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### b.  Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  Therefore, the Plan Proponent has *not* placed the following claims in any class:

### i.  Administrative expenses, involuntary gap claims, and quarterly and Court fees

Administrative expenses are costs or expenses of administering the Debtors' Chapter 11 cases which are allowed under § 503(b) of the Code.  Administrative expenses include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, and compensation for services and reimbursement of

expenses awarded by the court under § 330(a) of the Code.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.  Involuntary gap claims allowed under § 502(f) of the Code are entitled to the same treatment as administrative expense claims.  The Code also requires that fees owed under section 1930 of title 28, including quarterly and court fees, have been paid or will be paid on the effective date of the Plan.

The following chart lists the Debtors' estimated administrative expenses, and quarterly and court fees, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Administrative expenses | Morrison Tenenbaum PLLC Estimated unpaid fees through confirmation: $50,000.00[2] | Paid in full on the effective date of the Plan, unless the holder of a particular claim has agreed to different treatment |
| | EisnerAmper LLP Estimated unpaid fees through confirmation: $30,000.00. | Paid in full on the effective date of the Plan, unless the holder of a particular claim has agreed to different treatment |
| Statutory Court fees | $0.00 | Paid in full on the effective date of the Plan |
| Statutory Quarterly fees | Current[3] | Paid in full on the effective date of the Plan |
| **Total** | $80,000.00 | |

### ii.  Priority tax claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees

---

[2] After application of the pre-petition retainer.
[3] Any outstanding fees owed to the U.S. Trustee will be paid prior to the confirmation hearing.

otherwise, it must receive the present value of such claim pursuant to 11 U.S.C. § 511, in regular installments paid over a period not exceeding 5 years from the order of relief.

Under § 1129(a)(9)(C), holders of § 507(a)(8) claims are paid, over a period not later than 5 years after the order for relief, the allowed amount of their claim.

- The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment:

| Name and type of tax | Filed Amount of Claim | Treatment |
|---|---|---|
| Internal Revenue Service | $0.00. | The Internal Revenue Service filed a priority tax claim which has been amended to show that $0.00 is owed.<br><br>Any allowed priority tax claims shall be paid in full in regular installments paid over a period not exceeding 5 years from the order of relief. |

### c. Classes of Claims and Equity Interests

#### i. Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class | Description | Claim No. | Amount | Impairment? | Treatment |
|---|---|---|---|---|---|

| 1 | Secured Claim of Danny Mendelson | 8 | $541,584.70 | Impaired | To be paid interest only at the note rate of 15% with a balloon payment due in 10 years. |
|---|---|---|---|---|---|

### ii. General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of classes 4 and 5, which contain general unsecured claims against the Debtors:

| Class | Description | Impairment? | Treatment |
|---|---|---|---|
| 2 | All general unsecured claims except Danny Mendelson | Impaired | Class 2 claimants will receive a pro-rata distribution from the $125,000 plan fund, after payment of administrative and priority claims. The Debtor estimates that $45,000 will be available for distribution to general unsecured creditors and that they will receive a 5% distribution. Additionally, the net funds from avoidance actions, after paying the costs and expenses of litigation, shall be distributed to the unsecured creditors. |
| 3 | General unsecured claim of Danny Mendelson | Impaired | Mr. Mendelson has agreed to receive no distribution on the unsecured portion of his claim. |

### iii. Classes of equity interest holders

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the debtors. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders are the members. Finally, with respect to an individual who is a debtor, the debtor is the equity interest holder. The Debtor's equity is owned 80% by Anthony Morris and 20% by Nancy Morris.

Upon the Effective Date, Mr. and Mrs. Morris shall retain their membership interests in the Reorganized Debtors in consideration of a new value contribution to the reorganization in the amount of $125,000.  Under the absolute priority rule, equity interests cannot retain their interests unless all senior classes are either paid in full or vote to accept the plan.  The "new value" doctrine is a common law exception to the absolute priority rule. The basic concept behind "new value" is that equity holders may retain their interest in a debtor when they provide contribution, often in the form of capital, to the reorganization.  The Debtors believe that the contribution to the reorganization of capital in the amount of $125,000 satisfies the new value exception to the absolute priority rule.  The new value contribution shall be deposited in escrow with Debtors' counsel no later than one week prior to the date of the confirmation hearing.

The holders of Class 4 Interests are unimpaired under the Plan.

The following chart sets forth the Plan's proposed treatment of the classes of equity interest holders:

| Class | Description | Impairment? | Treatment |
|-------|-------------|-------------|-----------|
| 4 | Equity interest holders | Unimpaired | Retain their interests. |

### d.  Means of Implementing the Plan

### i.  Source of payments

Payments and distributions under the Plan will be funded by a $125,000.00 contribution to be paid by Mr. and Mrs. Morris.  By signing this Disclosure Statement below, Mr. and Mrs. Morris represent that they have the funds required and available to fund the plan contribution. The plan contribution shall be deposited in escrow with Debtors' counsel Morrison Tenenbaum PLLC ("MT Law") at least seven (7) days prior to the confirmation hearing.  All other plan

payments will be made by the Debtors from funds generated from operations.  The Debtor's counsel Morrison Tenenbaum PLLC shall be the disbursing agent (the "Disbursing Agent") under the plan.

### ii.  Post-confirmation Management

Post-petition the Debtor will continue to be managed by Anthony Morris and he will continue to receive compensation in the amount of $2,626.66 weekly.

### e.  Risk Factors

The proposed Plan has the following risks:

Changes in the economy and the New York high end furniture market could affect the Debtor's ability to make payments and other distributions required under the Plan.  However, the Debtor believes it is in a strong position to rebound upon reopening of the economy because the Debtor is continuing to receive calls for new orders.

### f.  Executory Contracts and Unexpired Leases

The Plan in Article 6 lists all executory contracts and unexpired leases that the Debtor will assume, and if applicable assign, under the Plan.  *Assumption* means that the Debtors have elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  Article 6 also lists how the Debtors will cure and compensate the other party to such contract or lease for any such defaults.

Under the Plan the Debtors are assuming the lease for the Debtor's premises between the Debtor and its landlord Avenue Management Group Ltd. as agent for Greenpoint Industrial Center, Inc. (the "Landlord").  The Landlord has not filed a proof of claim in this case.

The Debtor is finalizing the terms of a stipulation with its Landlord that will provide for assumption of the lease and a cure of the rent arrears.  That stipulation will be filed no later than 10 days prior to the date of the confirmation hearing.

If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 or have not previously been assumed, and if applicable assigned, or are not the subject of a pending motion to assume, and if applicable assign, will be assumed under the Plan.  Consult your advisor or attorney for more specific information about particular contacts or leases.

If you object to the retention of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

### g.   Tax Consequences of the Plan

The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan.  To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction.  To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

**THE PROPONENTS DO NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD**

**SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.**

### IV.    Confirmation Requirements and Procedures

To be confirmable, the Plan must meet the requirements listed in §1129 of the Code. These include the requirements that:

- The Plan must be proposed in good faith;

- If a class of claims is impaired under the Plan, at least one impaired class of claims must accept the Plan, without counting votes of insiders;

- The Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and

- The Plan must be feasible.

These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### a.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. Except as stated in Part IV.A.3 below, a creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both

(1) Allowed or allowed for voting purposes and

(2) Impaired.

In this case, the Plan Proponents believe that .

### i.   What is an allowed claim or an allowed interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either

> (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or

> (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim was October 21, 2019.**

### ii.   What is an impaired claim or impaired equity interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered *impaired* if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### iii.   Who is not entitled to vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

**Even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the Plan and the adequacy of the Disclosure Statement.**

### iv.  Who can vote in more than one class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### b.  Votes necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless:

(1)     all impaired classes have voted to accept the Plan; or

(2)     at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting classes, as discussed later in Section b.ii.

### i.  Votes necessary for a class to accept the plan

A class of claims accepts the Plan if both of the following occur:

(1) the holders of more than ½ of the allowed claims in the class, who vote, cast their votes to accept the Plan, and

(2) the holders of at least ⅔ in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least ⅔ in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### ii. Treatment of non-accepting classes of secured claims, general unsecured claims, and interests

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan upon the request of the Plan proponent if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a *cram down* plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not *discriminate unfairly*, and is *fair and equitable* toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a *cram down* confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

### c. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as *Exhibit D*. Pursuant to the liquidation analysis, after payment of administrative expenses, secured claims, and priority tax claims, there would be $0 available for distribution to general unsecured creditors in a liquidation.

### d.  Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

#### i.  Ability to initially fund plan

Anthony and Nancy Morris will fund the $125,000.00 plan contribution, to be held in escrow by MT Law, prior to the date of the confirmation hearing.

#### ii.  Ability to make future plan payments and operate without further reorganization.

The Plan Proponents must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponents have provided projected financial information.  Those projections are listed in *Exhibit E*.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### V.    Effect of Confirmation of Plan

#### a.  Discharge of Debtor

**Discharge if the Debtor is a corporation and § 1141(d)(2) is not applicable.**  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt:

(1) Imposed by the Plan, or

(2) To the extent provided in 11 U.S.C. § 1141(d)(6).

### b.  Modification of Plan

The Debtor may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if:

(1) The Plan has not been substantially consummated and

(2) The Court authorizes the proposed modifications after notice and a hearing.

### c.  Final Decree

Pursuant to EBNY LBR 3021(a), the Debtors shall file with the Court (on presentment in accordance with Local Bankruptcy Rule 2002-1) within 14 days after the entry of an order confirming a chapter 11 plan, a proposed order that shall contain a timetable with the steps proposed for achieving substantial consummation of the plan and entry of a final decree, including resolution of claims and resolution of avoidance and other bankruptcy court litigation outstanding or contemplated.

The Debtors expect that a final decree will be entered in this case within 14 days following the full administration of the Debtors' estate.  Upon request, the Court may reduce or extend the time to file such application.

## VI.     Other Plan Provisions

### a.  Statutory Fees

Statutory fees, and any applicable interest thereon, are all fees payable pursuant to chapter 123 of title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. § 1930(a)(6) and interest, if any, required to be paid by 31 U.S.C. §3717 (collectively, "U.S. Trustee Fees").  U.S. Trustee Fees will accrue and be timely paid until the

Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any U.S.

Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the

Effective Date of the Plan.  The Debtors shall remain responsible for any and all U.S. Trustee

fees that become due and shall pay same on a timely basis.

### b.   Quarterly Reports

Until the Chapter 11 Cases are closed, converted or dismissed, whichever is earlier, the

Reorganized Debtors shall file quarterly reports setting forth the status of Distributions to holders

of Allowed Claims.  The quarterly reports shall be filed on or before the 15th day of July,

October, January and April. In addition, the Disbursing Agent shall maintain an accurate register

of the General Unsecured Claims.  The quarterly reports shall also discuss the status of

distributions to general unsecured creditors.

### c.   Re-vesting of Assets and Continuing Existence

As of the Effective Date, pursuant to provisions of Bankruptcy Code sections 1141(b)

and (c), all property and assets of the Debtor shall be transferred to and shall vest in the Post-

Confirmation Debtor free and clear of all Liens, Claims and Interests, except as otherwise

expressly provided in the Plan and the Confirmation Order.

Unless otherwise agreed to by the claimant, immediately after the earlier of a Final Order

of the Bankruptcy Court or the occurrence of the Effective Date, the Debtor or the Post-

Confirmation Debtor shall pay all Allowed Administrative Expense Claims, including Fee

Claims.

From and after the Effective Date, the Post-Confirmation Debtor will continue in existence and shall be vested with all of the Debtor's assets.

### d.  Unclaimed Property

The Post Confirmation Debtor shall hold all Unclaimed Property (and all interest, dividends, and other distributions thereon), for the benefit of the respective holders of Claims entitled thereto under the terms of the Plan.

At the end of one (1) year following the relevant Distribution Date of particular Cash or other property to be distributed under the Plan, the holders of Allowed Claims entitled to Unclaimed Property held pursuant to this Section shall be deemed to have forfeited such property, and all right, title and interest in and to such property shall be retained by the Debtor.

### e.  Retention of Jurisdiction

Notwithstanding Confirmation, the Court shall retain jurisdiction for the following purposes:

(1)    Determination of the allowability of Claims upon objections filed to such Claims, and any pending litigation by the Debtor or by creditors or third parties;

(2)    Determination of requests for payment of Claims and fees entitled to priority under § 507;

(3)    Resolution of any disputes concerning the interpretation of the Plan;

(4)    Implementation of the provisions of the Plan;

(5)    Entry of Orders in aid of Consummation of the Plan;

(6)    Modification of the Plan pursuant to § 1127 of the Code;

(7)    Adjudication of any causes of action including voiding powers actions commenced by the Debtors-in-Possession; and

(8)    Entry of a Final Decree and closing the case

### f.  Injunction and Exoneration

Except as otherwise provided in the Plan or Confirmation Order, on and after the Confirmation Date, all entities which have held, currently hold, or may hold a debt, claim, other liability of interest against the Debtor pursuant to the provisions of § 1141(d) of the Bankruptcy Code and this section, are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such claim against property which is to be distributed under this Plan, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner or judgment, award, decree, order other than as permitted under sub-paragraph (a) above; and (c) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under this Plan.

### g.  Effective Date

The Plan shall be effective and binding on the Effective Date.  The Effective Date shall be the date of initial distributions under the Plan which shall occur no later than 14 days after entry of the Confirmation Order.  It will be a condition to the Effective Date that each of the following provisions, terms, and conditions will have been satisfied pursuant to the provisions of the Plan:

(1)  The Confirmation Order shall have been entered by the Court and shall not be subject to any stay or subject to an unresolved request for revocation under Section 1144 of the Bankruptcy Code.

(2)  The Debtors shall have paid initial distributions required by the Plan.

A summary of the initial distributions that are required for the plan to become effective is annexed hereto as Exhibit F.

Dated: Brooklyn, New York
      April 21, 2020

                                WALTER P. SAUER LLC

                                    /s/ Anthony Morris
                                By: Anthony Morris